UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| JENNIFER RAE MCDONALD, | ) | Case Number 20-50689 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN P. FITZGERALD, III, | ) | |
| Acting United States Trustee For Region Four, | ) | |
| | ) | |
| Plaintiff, | ) | AP Number _____ |
| | ) | |
| *v.* | ) | |
| | ) | |
| | ) | |
| JENNIFER RAE MCDONALD, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DENY DISCHARGE**

John P. Fitzgerald, III, Acting United States Trustee for Region Four, by counsel, objects under 11 U.S.C. §§ 105 and 727 to the granting of a discharge to Jennifer Rae McDonald (the "Defendant" or "Ms. McDonald") and in support thereof states as follows:

***Introductory Statement***

1.      For years, it appears that Defendant used her position as the head of an economic development agency to orchestrate a scheme to divert millions of dollars from the agency.  After her apparent scheme came to light, as such schemes do, state and federal law enforcement began investigating Defendant and her former employer sued her to recover tens of millions of dollars in damages.  In an attempt to evade the consequences of her conduct, Defendant claimed that there was a multi-million-dollar, secret settlement agreement with her former employer.  In her bankruptcy case, Defendant continued to assert that the purported secret settlement agreement

1

existed and treated it as if it were real.  In support of this assertion, Defendant filed false schedules, testified falsely her in bankruptcy case and in the bankruptcy case of an LLC she controls, and falsified documents she relies upon in the bankruptcy case, including the alleged settlement agreement itself.

2.      The United States Trustee seeks denial of Defendant's discharge under alternative theories of relief:

A.      If, as the United States Trustee believes, no settlement agreement between Defendant and her former employer exists, Defendant has falsified business records in violation of Section 727(a)(3); signed and filed false schedules, testified falsely at the Section 341 meeting and a Rule 2004 exam in violation of Section 727(a)(4), and; testified falsely at the Section 341 meeting of an entity she controls in violation of Section 727(a)(7);

B.      If the settlement agreement between the Defendant and her former employer does exist, Defendant has concealed and failed to keep or preserve business records, including the full settlement agreement itself and records of payments made under the settlement agreement, in violation of Section 727(a)(3), and; Defendant has failed to explain satisfactorily the loss or deficiency of assets to meet her obligations, particularly by failing to disclose sums paid under the settlement agreement and the amount still due under that agreement, in violation of Section 727(a)(5).

### *Jurisdiction, Venue and Parties*

3.      Defendant commenced a bankruptcy case on September 24, 2020, by filing a petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court

for the Western District of Virginia, Harrisonburg Division.  The filing of the petition commenced

case number 20-50689, and the case remains pending before this Court.

4.      Defendant signed the declarations under penalty of perjury regarding the petition,

schedules, statement of financial affairs and related documents filed on October 22, 2020 (the

"Petition," "Schedules," and "Statement of Financial Affairs")).  *See* Case No. 20-50689, Docket

Nos. 19 & 20.  As provided in 28 U.S.C. § 1746, the declarations signed by Defendant had like

force and effect of oaths.

5.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

157 and 1334.

6.      The statutory predicates for this complaint are 11 U.S.C. §§ 105 and 727.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9.      This Adversary Proceeding relates to the following chapter 7 bankruptcy case:  *In*

*re Jennifer Rae McDonald*, Case No. 20-50689, currently pending in the United States Bankruptcy

Court for the Western District of Virginia, Harrisonburg Division.

10.     Plaintiff is the United States Trustee for Region Four, and Plaintiff consents to entry

of final orders or judgment by this Court.[1]

11.     Defendant is the Debtor in this case.

12.     Defendant lives in Warren County, Virginia in the Western District of Virginia.

---

[1] The United States Trustee is a Department of Justice official charged with, among other things, supervising bankruptcy case administration.  28 U.S.C. § 586(a)(3).  United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049; *In re A-1 Trash Pickup, Inc.*, 802 F.2d 774, 775 (4th Cir. 1986).  The United States Trustee is authorized to file a complaint objecting to Defendant's discharge.  11 U.S.C. § 727(c)(1).

13.     The original deadline to file a complaint objecting to discharge was January 12, 2021.  The United States Trustee has obtained four extensions to that deadline.  The current deadline to file a complaint objecting to discharge is October 20, 2021.  *See* Case No. 20-56089, Docket No. 173.  This complaint is timely filed.

### *Background Leading Up To The Petition Date*

14.     In April of 2008, Defendant was hired as the executive director of the Industrial Development Authority of the Town of Front Royal and the County of Warren, Virginia a/k/a Economic Development Authority of the Town of Front Royal and the County of Warren, Virginia (the "EDA").  Defendant had previously been employed by the EDA in other positions.

15.     Patricia Wines was the chairman of the board of the EDA from at least 2015 through her death on or about July 11, 2017.

16.     In March of 2018, the Defendant formed a Virginia LLC called Moveon8, LLC ("Moveon8").

17.     In 2018, the EDA discovered that Defendant had allegedly diverted funds from the EDA for her own purposes without authorization.  This led to an investigation by an accounting firm hired by the EDA and an investigation by the Virginia State Police.

18.     Defendant's last day as an employee of the EDA was December 20, 2018.

19.     By email dated December 20, 2018, from Defendant to an attorney for the EDA, Defendant offered to "make herself liable" for the EDA receiving approximately $2,700,000.00 within six months if it was agreed that this was all she would have to repay the EDA.  A copy of that email is attached as **Exhibit A**.

20.     Defendant's December 20, 2018, email contains no mention of the Executed Settlement Agreement (as defined below), any other settlement agreement or any sums allegedly owed to Defendant by the EDA for sexual harassment or any other claims.

21.     On March 26, 2019, the EDA filed a lawsuit against Defendant and others, including Moveon8, in the Circuit Court of Warren County seeking damages related to Defendant's conduct.  That case is styled *Industrial Development Authority of the Town of Front Royal and the County of Warren, Virginia v. McDonald, et al.*, Case No. CL 19-398 ("EDA Lawsuit") and remains pending although the EDA and Defendant have reached a settlement as alleged herein.

22.     McDonald was arrested on state criminal charges of fraud and embezzlement related to her actions at the EDA on May 25, 2019.

23.     The EDA filed a First Amended Complaint in the EDA Lawsuit on or about October 4, 2019.  By court order, the EDA's First Amended Complaint was deemed filed on October 17, 2019.

24.     Generally, the EDA alleges in the EDA Lawsuit that Defendant used her position as Executive Director of the EDA to defraud the EDA and divert funds from it for her own benefit in various ways.

25.     The Amended Complaint in the EDA Lawsuit specifically alleges that Defendant "often doctored and/or created false documents and then made or directed to be made false entries in the Warren EDA books and records to conceal the diverted monies."

26.     The Amended Complaint in the EDA Lawsuit alleges that Defendant had created, or caused to be created, false minutes of meetings of the Warren EDA.

27.     The Amended Complaint in the EDA Lawsuit alleges that Defendant entered into evidence four fraudulent documents, including at least one forged signature, as exhibits to the Warren County Circuit Court at a hearing in the EDA Lawsuit.

28.     The EDA Lawsuit sought, among other relief, damages in the principal amount of $21,309,120.11, treble damages under Virginia Code § 18.2-500 and $350,000.00 in punitive damages.

29.     The state court criminal charges against Defendant were dismissed without prejudice on or about April 17, 2020.

30.     Defendant did not file a response to the EDA Lawsuit and the Warren County Circuit Court entered an Order on April 21, 2020, declaring her to be in default.

31.     The EDA then served discovery on the Defendant in the EDA Lawsuit, but the Defendant did not respond to the discovery.

32.     A hearing on the EDA's motion for sanctions regarding, among other things, Defendant's failure to respond to discovery in the EDA Lawsuit, was scheduled for September 25, 2020.

**Bankruptcy Petition, Schedules and Initial Proceedings in Bankruptcy Court**

33.     Defendant filed her bankruptcy case on September 24, 2020.

34.     Defendant filed her Schedules, Statement of Financial Affairs and related documents in her bankruptcy case on October 22, 2020. *See* Case No. 20-56089, Docket Nos. 19 and 20.

35.     In response to Question 33 on Schedule A/B filed on October 22, 2020, on page 8 of that schedule, the Debtor disclosed a "Settlement amount due to Debtor from Economic Development Authority of Warren County" and valued that asset as "Unknown."

36.     Defendant does not report any income from the EDA other than her salary in response to Questions 4 and 5 on her Statement of Financial Affairs.

37.     Defendant did not claim the settlement with the EDA or funds due under same as exempt on her Schedule C.

38.     Defendant schedules total assets of $2,487,336.80.  *See* Case No. 20-50689, Docket 19, Page 10.   This is broken down as follows:   A) Real Estate - $970,000.00; B) Vehicles - $40,581.50; C) Personal and Household Items - $745.00; D) Total Financial Assets - $1,476,010.30.

39.     The Total Financial Assets category is almost all related to LLCs partially owned by Defendant.  Those LLCs in turn own real property.

40.     Included among the LLCs disclosed by the Defendant on A/B is Moveon8.  In her Schedule A/B, Question 19, Defendant discloses that she is the owner of 70% of the membership interests in Moveon8.

41.      Under the definition in Section 101(31) of the Bankruptcy Code, Defendant is an insider of Moveon8 and Moveon8 is an insider of the Debtor.

42.     On November 12, 2020, the EDA filed a Motion for Relief from Stay in Defendant's bankruptcy case (the "EDA's MFR").  *See* Case No. 20-56089, Docket No. 25.  The EDA's MFR sought relief from the automatic stay to proceed against the Defendant and others in state court and to recover certain property that was allegedly not property of the estate.

44.     The EDA's MFR included detailed factual allegations regarding how the Defendant diverted funds from the EDA.

**Moveon8 Petition, Schedules and Initial Proceedings in Bankruptcy Court**

45.     On September 24, 2020, Defendant signed a petition commencing a chapter 7 bankruptcy case in this Court for Moveon8.   Moveon8's bankruptcy case was assigned case number 20-50690.

46.     As of the date Moveon8's petition was filed, the Defendant was the owner of 70% of the membership interests in Moveon8.

47.     Moveon8 filed its schedules, statement of financial affairs and related documents in her bankruptcy case on October 22, 2020.  *See* Case No. 20-56090, Docket Nos. 19 and 20.

48.     Defendant signed the schedules, statement of financial affairs and related documents filed by Moveon8.

49.     On November 12, 2020, the EDA filed a Motion for Relief from Stay in the Moveon8 case (the "EDA's MFR Against Moveon8").  *See* Case No. 20-56090, Docket No. 24. The EDA's MFR Against Moveon8 sought relief from the automatic stay to proceed against the Defendant and others in state court and to recover certain property that was allegedly not property of the estate.

50.     The EDA's MFR Against Moveon8 included detailed factual allegations regarding how the Defendant diverted funds from the EDA involving Moveon8.

**Section 341 Meetings in Defendant's Bankruptcy Case**

51.     The chapter 7 meeting of creditors in the Defendant's underlying Bankruptcy Case, Case Number 20-50689, was held on November 13, 2020.

52.     At her meeting of creditors, Defendant was put under oath and testified under penalty of perjury that, among other things:

        A.     That Defendant signed the bankruptcy papers her attorney prepared;

8

B. That Defendant personally read the Petition, Schedules, and Statement of Financial Affairs before signing them;

C. That the information in Defendant's Petition, Schedules, and Statement of Financial Affairs was accurate and complete;

D. That Defendant listed everything she owned and everyone to whom she owed money;

E. That the EDA owed Defendant money "for a settlement agreement" for sexual harassment;

F. That the original agreement with the EDA was for 6.5 million dollars;

G. That the settlement agreement was subject to a set-off;

H. That the settlement agreement with the EDA was the same agreement listed on page 8 of Schedule A/B;

I. That the original amount of the settlement agreement was 6.5 million dollars;

J. That the value of the settlement agreement was listed as "unknown" because there were "valuation issues on that agreement";

K. That there was a written settlement agreement between Defendant and the EDA;

L. That Defendant did not have a copy of the original agreement and that it was left in her office at the EDA;

M. The settlement agreement with the EDA was dated August 28, 2015;

N. That the EDA was required to pay Defendant 6.5 million dollars under the settlement agreement;

O.     That documentation regarding records of payments to Defendant or anyone on Defendant's behalf under the settlement agreement were in Defendant's personnel file at the EDA offices;

P.     That Defendant had the initial pages of the settlement agreement, but not a fully executed document;

Q.     The EDA did not owe Defendant any money other than money owed under the settlement agreement;

R.     That Patricia Wines, the chairman of the EDA at the time, and William Biggs, the treasurer of the EDA at the time, told her that the settlement agreement had been approved by the board of the EDA;

S.     That Ms. Wines had the settlement agreement drafted;

T.     That Defendant was the Executive Director of the EDA at the time of the settlement agreement;

U.     In the past, Defendant had a fully executed copy of the settlement agreement with the EDA;

V.     The fully executed copy of the settlement agreement was located in Defendant's personnel file in the office at the EDA and Defendant was not allowed to take it when she left;

W.     Under the settlement agreement, Ms. Wines and Mr. Biggs were authorized to make payments under the settlement agreement;

X.     That Defendant had no documents reflecting what was owed to her under the settlement agreement.

53.     At the Section 341 meeting, Defendant asserted her rights pursuant to the Fifth Amendment of the United States Constitution and refused to answer questions on the following topics:

A.     What the "valuation issues were" regarding the value of the settlement agreement with the EDA;

B.     What Defendant was owed by the EDA under the settlement agreement;

C.     Whether the EDA had made any cash payments or transferred any real property or personal property to Defendant under the settlement agreement with the EDA;

D.     Whether the EDA had paid Defendant any portion of the 6.5 million dollars owed under the settlement agreement;

E.     When Defendant got the first payment under the settlement agreement with the EDA;

F.     Whether Defendant got any payments under the settlement agreement with the EDA;

G.     What records Defendant had reflecting payments to Defendant under the settlement agreement with the EDA;

H.     The identity of the person who sexually harassed Defendant that led to the settlement agreement;

I.     How the payments due under the settlement agreement were to be funded;

J.     Whether the EDA had the funds to pay the 6.5 million dollars to be paid under the settlement agreement;

K.     Whether Ms. Wines or Mr. Biggs had authorized payments to Defendant.

**Section 341 Meeting in Moveon8's Bankruptcy Case**

54.    The chapter 7 meeting of creditors in Moveon8's Bankruptcy Case, Case Number 20-50690, was held on November 13, 2020.

55.    At Moveon8's meeting of creditors, Defendant was put under oath and testified under penalty of perjury that, among other things:

A.    She was a member, co-manager and 70% owner of Moveon8;

B.    Moveon8 was set up in September of 2018 for the purpose of residential real estate investment;

C.    Moveon8 owned a parcel of real estate consisting of a three-bedroom home and approximately 43 acres on 1321 Happy Creek Road;

D.    There was income available to Moveon8 from a settlement agreement between Defendant and someone else;

E.    Defendant had a settlement agreement that she was going be getting money from and Defendant used those funds, at least in part, to fund development through Moveon8;

F.    Defendant received a portion of the settlement funds;

G.    Moveon8 acquired the Happy Creek Road property from another entity called Daboyz, LLC ("Daboyz");

H.    Defendant was a 50% owner of Daboyz;

I.    The other 50% owner of Daboyz was former Warren County Sheriff Daniel McEathron;

J.    Daboyz acquired the Happy Creek Road property in April of 2017;

K.  Daboyz paid approximately $1,000,000.00 for the Happy Creek Road property;

L.  Defendant did not wish to make any changes to her testimony set out above;

M.  Defendant's testimony was true and correct to the best of her knowledge and belief;

N.  Daboyz transferred the Happy Creek Road property to Moveon8 on or about April 23, 2018;

O.  Daboyz transferred the Happy Creek Road property to Moveon8 for no consideration;

P.  Prior to the transfer of the Happy Creek Road property from Daboyz to Moveon8, Sheriff McEathron gave up his membership interest in Daboyz for no consideration;

Q.  Sheriff McEathron did not put up any money to purchase the Happy Creek Road property.

56.  At Moveon8's Section 341 meeting, Defendant asserted her rights pursuant to the Fifth Amendment of the United States Constitution and refused to answer questions on the following topics:

A.  How much of the settlement funds Defendant received;

B.  Who Defendant was supposed to receive the settlement funds from;

C.  Whether Defendant was developing the Happy Creek Road property in her individual capacity or in her capacity as the director of the EDA;

D.  Whether the money to purchase the Happy Creek Road property came from an EDA credit facility;

E.    Where Daboyz acquired the funds to purchase the Happy Creek Road property;

F.    Why Sheriff McEathron was a member of Daboyz;

G.    Why Sheriff McEathron gave up his interest in Daboyz for no consideration.

**The Purported Settlement Agreement and Events after the Section 341 Meetings**

57.    A true and correct copy of the unexecuted alleged settlement agreement (the "Unexecuted Settlement Agreement") is attached as **Exhibit B**.

58.     The United States Trustee received the document attached as **Exhibit B** on December 7, 2020.

59.    On December 4, 2020, Defendant filed an opposition to the EDA's MFR the ("Defendant's Response to MFR").  *See* Case No. 20-56089, Docket No. 35.  The Defendant's Response to MFR did not admit or deny the specific allegations regarding her wrongdoing, instead refusing to address those allegations based on her Fifth Amendment privilege against self-incrimination.

60.    On December 4, 2020, Defendant filed an opposition to the EDA's MFR Against Moveon8 the ("Defendant's Response to MFR Against Moveon8").  *See* Case No. 20-56090, Docket No. 40.  The Defendant's Response to MFR Against Moveon8 did not admit or deny the specific allegations regarding Defendant's wrongdoing, instead refusing to address those allegations based on Defendant's Fifth Amendment privilege against self-incrimination.

61.    A true and correct copy of the executed alleged settlement agreement and an alleged memorandum of understanding related to same (referred to collectively as the "Executed Settlement Agreement") is attached as **Exhibit C**.

14

62.    The United States Trustee received the document attached as **Exhibit C** on April 14, 2021.

63.    Both the Unexecuted Settlement Agreement and the Executed Settlement Agreement are dated August 28, 2015.

64.    The EDA has denied that a settlement agreement with Defendant exists.

65.    On December 15, 2020, the EDA filed an affidavit from a records custodian in this Court in Defendant's Bankruptcy Case.  *See* Case No. 20-50689, Docket No. 45, Exhibit 1, Bates Nos. 230-233.  In the affidavit, among other things, the records custodian denied that any records exist in the EDA's files discussing or approving any settlement agreement between the EDA and Defendant related to sexual harassment.  A copy this affidavit is attached as **Exhibit D**.

66.    On January 26, 2021, the EDA filed in Defendant's bankruptcy case a number of declarations under penalty of perjury from former members of the board of directors of the EDA and former county attorneys for Warren County and counsel for the EDA.  *See* Case No. 20-50689, Docket No. 68, Exhibit 5, Bates Nos. 503-07, 527-528; Exhibit 6, Bates Nos. 591-92.  The declarations are attached collectively as **Exhibit E**, but to summarize, each of the declarations states that there is and was no settlement agreement between the EDA and Defendant.[2]

**United States Trustee's Bankruptcy Rule 2004 Examination of Defendant**

67.    Counsel for the United States Trustee received Court approval for and conducted a Bankruptcy Rule 2004 examination of Defendant on June 2, 2021.

68.    Defendant was under oath during the Bankruptcy Rule 2004 examination.

69.    At the Bankruptcy Rule 2004 Examination, Defendant testified, in part, as follows:

---

[2] Included among these declarations is a declaration of William Biggs.  Mr. Biggs' declaration states, among other things, that "Ms. McDonald's claim that I knew of, or participated in, or approved of in any way a multi-million-dollar settlement agreement between her and the Warren EDA is not true."

A.      The EDA's annual operating budget in 2015 was between $400,000.00 and $500,000.00;

B.      Defendant has a college degree;

C.      That Defendant's Schedules were accurate that she was owed an unknown amount of money by the EDA under a settlement agreement;

D.      That the documents attached as **Exhibit C** were the settlement agreement referred to in the answer to Question 33 on Schedule A/B filed on October 22, 2020;

E.      That the value of the Executed Settlement Agreement was listed as "unknown" because it had been disputed by the EDA.

F.      That the documents attached as pages 3-6 of **Exhibit C** were the executed version of the unexecuted settlement agreement Defendant testified about at the Section 341 meeting;

G.      That one of Defendant's attorneys acquired the documents attached as **Exhibit C** after the Section 341 meeting;

H.      Defendant kept personal financial records in her office at the EDA;

I.      Defendant resigned her job at the EDA at the request of the EDA's board of directors;

J.      That Defendant's last day physically in the EDA's offices was December 7, 2018;

K.      That Defendant did not have an attorney or other advisor representing her with regard to pages 3-6 of **Exhibit C**;

L.    That the EDA did have an attorney, Blair Mitchell, as of August 28, 2015 - the date of the documents attached as **Exhibit C**;[3]

M.    That Defendant did not have a copy of the original Executed Settlement Agreement and that was left in her office at the EDA;

N.    That the EDA was required to pay Defendant 6.5 million dollars under the documents attached as **Exhibit C**;

O.    That documentation regarding records of payments to Defendant or anyone on Defendant's behalf under the Executed Settlement Agreement were in Defendant's personnel file at the EDA offices;

P.    Michelle Henry was an administrative assistant for the EDA;

Q.    That Defendant sent the email attached as **Exhibit A**;

R.    On December 20, 2018, other than sums owed under the Executed Settlement Agreement, the EDA owed her approximately $4,000.00;

S.    There was nothing preventing her from taking her personal financial records from the EDA office up until late 2018.

70.    At the Rule 2004 exam, Defendant asserted her rights pursuant to the Fifth Amendment of the United States Constitution and refused to answer questions on the following topics:

A.    What Defendant believed to be the value of the settlement agreement set out on page 8 of Schedule A/B;

---

[3] Included in the declarations attached as **Exhibit E** is a declaration of Blair Mitchell.  Included in Mr. Mitchell's declaration is the statement that: "At no time during the time that I served as the County Attorney for Warren County and counsel for the Warren EDA, from January 8, 2007 through April 30, 2016, have I heard of any settlement agreement of any kind or in any amount between the Warren EDA and Ms. McDonald."

B.     Why the value of the settlement agreement was not 6.5 million dollars less amounts paid to Defendant by the EDA;

C.     Who drafted **Exhibit C**;

D.     Where the original of the documents attached as **Exhibit C** were and the last time Defendant saw them;

E.     What members of the board of directors of the EDA as of August 28, 2015 were involved in drafting the documents attached as **Exhibit C**;

F.     Whether Defendant was given a copy of **Exhibit C** pursuant to its terms;

G.     What Defendant did with, and where Defendant kept, her copy of **Exhibit C**;

H.     Whether Defendant was given, and where she kept, documents referenced in **Exhibit C**;

I.     Whether it was Ms. Wines' signature at the top of page 2 of **Exhibit C**;

J.     Whether Ms. Wines in fact signed the top of page 2 of **Exhibit C**;

K.     Whether Defendant saw Ms. Wines sign the top of page 2 of **Exhibit C**;

L.     Whether Defendant or someone else signed Ms. Wines' name to the top of page 2 of **Exhibit C**;

M.     Any of the other details regarding the signing of the document that pages 1-2 of **Exhibit C**, including whether Defendant signed that document and when it was signed;

N.     Whether Defendant prepared pages 1-2 of **Exhibit C**;

O.     Why the EDA would not have a copy of pages 1-2 of **Exhibit C**;

P.      Any information regarding Attachment A, Attachment B and Attachment C referenced on page 3 of **Exhibit C**;

Q.      The names of the persons described on page 3 of **Exhibit C** (the Board Member, the County Staff member and Real Estate Agent representing the IDA) that allegedly sexually harassed and/or assaulted Defendant;

R.      Information regarding anything filed with "the Chairman and Secretary of the Board of Directors through the Employee Grievance Policy" as described on page 3 of **Exhibit C**;

S.      The names of board members Defendant complained to as described on page 3 of **Exhibit C**;

T.      Other details regarding the complaints referenced on page 3 of **Exhibit C**, including whether written complaints existed and their location;

U.      Details regarding Defendant's damages set out on page 3 of **Exhibit C**, including whether written records of those damages existed;

V.      The terms of payment pursuant to section 1b on page 3 of **Exhibit C**;

W.      The time period for the EDA to make payment to Defendant under **Exhibit C**;

X.      Whether the Asset Committee, Personnel Committee or Board of Directors of the EDA approved payments to Defendant under section 1c on page 3 of **Exhibit C** and what records exist regarding same;

Y.      How Defendant would request payments under section 1c on page 3 of **Exhibit C** and what records exist regarding same;

Z. Whether Defendant got any payments under the Executed Settlement Agreement after Ms. Wines died;

AA. Who wrote the initials at the bottom of pages 3-5 of **Exhibit C**;

BB. Other details regarding the initials at the bottom of pages 3-5 of **Exhibit C**;

CC. Whether the Board of Directors of the EDA approved the payment of 6.5 million dollars to Defendant;

DD. Whether there was insurance coverage for the EDA's payment of 6.5 million dollars to Defendant;

EE. Whether Defendant disclosed **Exhibit C** to anyone;

FF. Whether Ms. Henry signed page 6 of **Exhibit C**;

GG. Whether Defendant communicated with Ms. Henry regarding the settlement agreement;

HH. Whether Defendant signed Ms. Henry's name or transferred her signature from another document to page 6 of **Exhibit C**;

II. Whether it was Ms. Wines' signature at the top of page 6 of **Exhibit C**;

JJ. Whether Ms. Wines in fact signed the top of page 6 of **Exhibit C**;

KK. Whether she saw Ms. Wines sign the top of page 6 of **Exhibit C**;

LL. Whether Defendant's signature is the second signature on page 6 of **Exhibit C**;

MM. Who was present when page 6 of **Exhibit C** was signed;

NN. Whether Defendant or someone else signed Ms. Wines' name to the top of page 6 of **Exhibit C**;

OO. Any of the other details regarding the signing of page 6 of **Exhibit C**;

PP.     Whether Defendant prepared or falsified **Exhibit C**;

QQ.     Whether **Exhibit C** was a bona fide, valid document that binds both her and the EDA;

RR.     Whether **Exhibit C** was in the EDA's files or Defendant's personnel file when she left the EDA;

SS.     Whether **Exhibit C** was in Defendant's possession when she left the EDA;

TT.     The number of payments and the total value of the payments made under the Executed Settlement Agreement;

UU.     Whether payments were made to Defendant, legal entities she controlled, obligations she owed or her relatives under the Executed Settlement Agreement;

VV.     Whether Defendant or someone acting on her behalf kept records of payments under the Executed Settlement Agreement and where such records were kept;

WW.     Whether Defendant included payments made under the Executed Settlement Agreement on her taxes;

XX.     Whether the EDA owed Defendant any money under the Executed Settlement Agreement on December 20, 2018;

YY.     Why there was no mention of the Executed Settlement Agreement or sums owed to Defendant in Defendant's December 20, 2018, email to the EDA (**Exhibit A**);

ZZ.     Whether Defendant took a copy of the Executed Settlement Agreement or

records of payments under same from Defendant's office at the EDA and

kept them somewhere else.

**Events After the Bankruptcy Rule 2004 Exams**

71.     On July 2, 2021, Defendant and the EDA filed a Joint Motion to Approve

Stipulation Excepting Claim from Discharge and Enter the Stipulated Non-Dischargeable

Judgment (the "EDA Settlement Motion") in Defendant's bankruptcy case.  *See* Case No. 20-

50689, Docket No. 137.

72.     In the EDA Settlement Motion, Defendant agreed to a $9,000,000.00 non-

dischargeable claim in the bankruptcy case in favor of the EDA.  Defendant also agreed to the

entry of a $9,000,000.00 non-dischargable judgment against her and in favor of the EDA by the

Warren County Circuit Court in the EDA Lawsuit.  *See* Case No. 20-50689, Docket No. 137.

73.     On July 20, 2021, this Court approved the EDA Settlement Motion and entered a

Non-Dischargeable Consent Judgment Order granting a non-dischargable judgment in the amount

of $9,000,000.00 in favor of the EDA against the Defendant.  *See* Case No. 20-50689, Docket No.

158.

74.      On August 25, 2021, Ms. McDonald was indicted in the United States District

Court for the Western District of Virginia on 34 counts including wire fraud, bank fraud,

aggravated identity theft, and money laundering.  That case is proceeding as *United States v.

McDonald*, 5:21-CR-00012 (the "Criminal Case").

75.     Included in the Criminal Case are allegations that Ms. McDonald created false

documentation to disguise her scheme to defraud, forged the name of others to disguise and effect

her scheme to defraud, and submitted false documentation to bank employees, auditors, and settlement agents to effect her scheme to defraud.

76.    On September 7, 2021, counsel for the United States Trustee requested (through counsel for Defendant) that Defendant provide the following categories of documents:

A.    Records reflecting payments to Ms. McDonald or any other person pursuant to the Executed Settlement Agreement (**Exhibit C**), including payments made by the EDA or any other person or entity;

B.    Records reflecting the amount owed Ms. McDonald on the petition date (September 24, 2020) under the Executed Settlement Agreement (**Exhibit C**).

77.    On September 15, 2021, Defendant's bankruptcy counsel responded that she was not in possession of the documents requested in paragraph 76 above.

78.    Due to Defendant's invocation of the Fifth Amendment, it is unclear, but it appears that Defendant is claiming that the funds that she wrongfully took from the EDA were authorized pursuant to the Executed Settlement Agreement.

**Summary of Allegations if the Executed Settlement Agreement is not a Valid Document**

79.    On information and belief, the United States Trustee asserts that after an opportunity for discovery the evidence will likely show that there is no valid obligation owed by the EDA to Defendant as set out in the answer to Question 33 on her Schedule A/B.

80.    On information and belief, the United States Trustee asserts that after an opportunity for discovery the evidence will likely show that there is and was no settlement agreement between Defendant and the EDA regarding sexual harassment or other claims.

81.    On information and belief, the United States Trustee asserts that after an opportunity for discovery the evidence will likely show that Defendant invented the Unexecuted

Settlement Agreement and the Executed Settlement Agreement and the obligations they allegedly create in an attempt to shield herself from consequences related to funds she wrongfully took from the EDA.

82.     On information and belief, the United States Trustee asserts that after an opportunity for discovery the evidence will likely show that the documents attached as **Exhibits B** and **C** are false and were created by Defendant or someone acting on her behalf.

83.     Specific factual allegations supporting the fact that the Defendant is not entitled to a discharge because she has invented a settlement agreement between Defendant and the EDA, signed false schedules and testified falsely about it are detailed above, but the facts supporting this conclusion include:

A.  The amount allegedly owed her under the Executed Settlement Agreement, especially when compared with the EDA's operating budget as of the date of the Executed Settlement Agreement;

B.  Defendant's failure to mention the Executed Settlement Agreement or amounts allegedly owed to her in her December 20, 2018, email to the EDA (**Exhibit A**);

C.  Defendant's falsification of EDA records in proceedings in the EDA Lawsuit;

D.  Defendant's failure to answer or respond to discovery in the EDA Lawsuit;

E.  Defendant's refusal to answer allegations about her wrongdoing in the EDA's MFR or the EDA's MFR Against Moveon8;

F.  The affidavits and declarations executed under oath by employees, board members and attorneys for the EDA denying the existence of any settlement agreement that were filed in Defendant's bankruptcy case;

G. Defendant's repeated invocation of the Fifth Amendment to avoid testifying about the circumstances surrounding the signing of the origins of the Executed Settlement Agreement, and witnesses to same;

H. Defendant's repeated invocation of the Fifth Amendment to avoid testifying about the validity of signatures, including her own, on the Executed Settlement Agreement;

I. Defendant's repeated invocation of the Fifth Amendment to avoid testifying about payments allegedly made to her under the Executed Settlement Agreement;

J. Defendant's failure to have in her possession a copy of the Executed Settlement Agreement at the commencement of the bankruptcy case;

K. Defendant's failure to have in her possession a complete copy of the Executed Settlement that includes all attachments;

L. Defendant's failure to have in her possession any records regarding the Executed Settlement Agreement, including records regarding payments to her under the agreement;

M. Defendant's settlement of the EDA Lawsuit for a nine-million-dollar non-dischargeable judgment.

**Summary of Allegations if the Executed Settlement Agreement is a Valid Document**

84.     If the Executed Settlement Agreement is a valid obligation and the EDA does owe money to Defendant under it, Defendant has concealed information about sums owed to her by the EDA, failed to keep or provide documents regarding same, refused to testify regarding same, and has failed to explain what payments she received under the Executed Settlement Agreement or the value of that agreement.

85.     Specific factual allegations supporting the fact that Defendant is not entitled to a discharge even if a settlement agreement between Defendant and the EDA exists are detailed above, but the facts supporting this conclusion include:

A.     The payments due under the Executed Settlement Agreement between the EDA and Defendant would most likely be Defendant's largest single asset;

B.     Defendant's failure to have in her possession a copy of the Executed Settlement Agreement at the commencement of the bankruptcy case;

C.     Defendant's failure to have in her possession a complete copy of the Executed Settlement that includes all attachments;

C.     Defendant's failure to have in her possession any records regarding the Executed Settlement Agreement, including records regarding payments to her under the agreement;

D.     Defendant's failure to disclose the value of the Executed Settlement Agreement on Schedule A/B and failure to disclose payments to her under the agreement on her Statement of Financial Affairs;

E.     Defendant's repeated invocation of the Fifth Amendment to avoid testifying about payments allegedly made to her under the Executed Settlement Agreement;

F.     Defendant's repeated invocation of the Fifth Amendment to avoid testifying about records related to the Executed Settlement Agreement;

G.     Defendant's repeated invocation of the Fifth Amendment to avoid testifying about the amount owed her under the Executed Settlement Agreement;

H.     The Defendant's repeated invocation of the Fifth Amendment to avoid testifying about transactions regarding legal entities she held an interest in;

I.       The Defendant's failure to explain the difference between the 6.5-million-dollar

value of the Executed Settlement Agreement on August 28, 2015 and the total value

of her assets of $2,487,336.80 disclosed on Schedule A/B filed October 22, 2020.

### *Causes of Action if the Purported Settlement Agreement Does Not Exist*

### First Cause of Action – 11 U.S.C. § 727(a)(3)

86.       The allegations set forth above are incorporated herein as if repeated in their

entirety, particularly paragraphs 1-15, 17-20, 21-39, 42-44, 49-53, 57-83 (inclusive).

87.       A discharge may be denied to a debtor when, "the debtor has concealed, destroyed,

mutilated, falsified, or failed to keep or preserve any recorded information, including books,

documents, records, and papers, from which the debtor's financial condition or business

transactions might be ascertained, unless such act or failure to act was justified under all of the

circumstances of the case;".  11 U.S.C. § 727(a)(3).

88.       A debtor may not assert his or her rights under the Fifth Amendment to the United

States Constitution to avoid his or her burden of proof under Section 727(a)(3).  *See In re Wazeter*,

209 B.R. 222, 231 (W.D. Mich. 1997) ("Debtor contends that the bankruptcy court substituted the

invocation of Fifth Amendment rights for evidence of inadequate records. The debtor is incorrect

in arriving at this conclusion. The court instead concluded that the invocation of such rights could

not relieve debtor of his burden to prove justification.").

89.       Defendant has violated § 727(a)(3) by concealing, destroying, mutilating, falsifying

or failing to keep or preserve books, documents, records, and papers, from which her financial

condition or business transactions might be ascertained, including, but not limited to:

A.       Falsifying the Unexecuted Settlement Agreement (the document attached

as **Exhibit B)**;

   B. Falsifying the Executed Settlement Agreement (the documents attached as **Exhibit C)**.

90. The concealment, destruction, mutilation, falsification, or failure to keep or preserve any recorded information, from which Defendant's financial condition or business transactions might be ascertained is not justified under all the circumstances of this case.

91. Defendant's discharge should be denied under 11 U.S.C. § 727(a)(3).

**Second Cause of Action -- 11 U.S.C. § 727(a)(4)(A)**

92. The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 1-15, 17-20, 21-39, 42-44, 49-53, 57-75, 78-83 (inclusive).

93. "A false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).

94. Plaintiff objects to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(4)(A) on the grounds that Defendant knowingly and fraudulently made false oaths in and in connection with this case.

95. As alleged above, the United States Trustee asserts that after an opportunity for discovery the evidence will likely show that Defendant invented the Executed Settlement Agreement and the obligation it allegedly creates.

96. In connection with that, Defendant filed false Schedules and testified falsely regarding the alleged settlement, the written agreements related to same, amounts allegedly due to her under those agreements and the existence and location of documents related to same.

97.    Under penalty of perjury, Defendant certified multiple times that the Schedules and Statement of Financial Affairs were true and correct when in truth and fact, as Defendant well knew, the Schedules and Statement of Financial Affairs failed to accurately information about her financial affairs, businesses, creditors, and property, including but not limited to: A) The response to Question 33 of Schedule A/B, and; B) the responses to Questions 4 or 5 of the Statement of Financial Affairs;

98.    At her meeting of creditors on November 13, 2020, Defendant gave material testimony under oath that she knew was false, including, but not limited to:

A.    That the information in her Petition, Schedules, Statement of Financial Affairs was accurate and complete;

B.    That the EDA owed her money "for a settlement agreement" for sexual harassment;

C.    That the original agreement with the EDA was for 6.5 million dollars;

D.    That the original amount of the settlement agreement was 6.5 million dollars;

E.    That the value of the settlement agreement was listed as "unknown" because there were "valuation issues on that agreement";

F.    That there was a written settlement agreement between Defendant and the EDA;

G.    That her copy of the original agreement with the EDA was left in her office at the EDA;

H.    The settlement agreement with the EDA was dated August 28, 2015;

I.    That the EDA was required to pay her 6.5 million dollars under the settlement agreement;

J.    That documentation regarding records of payments to her or anyone on her behalf under the settlement agreement were in her personnel file at the EDA offices;

K.     That Ms. Wines, the chairman of the EDA at the time, and Mr. Biggs, the treasurer of the EDA at the time, told her that the settlement agreement had been approved by the board of the EDA;

L.     That Ms. Wines had the settlement agreement drafted;

M.     In the past Defendant had a fully executed copy of the settlement agreement with the EDA;

N.     The fully executed copy of the settlement agreement was located in her personnel file in the office at the EDA and she was not allowed to take it when she left;

O.     Under the settlement agreement Ms. Wines and Mr. Biggs were authorized to make payments under the settlement agreement.

99.     At the Bankruptcy Rule 2004 Examination on December 22, 2020, Defendant gave material testimony under oath that she knew was false, including, but not limited to:

A.     That Defendant's Schedules were accurate that she was owed an unknown amount of money by the EDA under a settlement agreement;

B.     That the documents attached as **Exhibit C** were the settlement agreement referred to in the answer to Question 33 on Schedule A/B filed on October 22, 2020;

C.     That the value of the Executed Settlement Agreement was listed as "unknown" because it had been disputed by the EDA;

D.     That the documents attached as pages 3-6 of **Exhibit C** were the executed version of the unexecuted settlement agreement Defendant testified about at the Section 341 meeting;

E.     That Defendant did not have a copy of the original Executed Settlement Agreement and that was left in her office at the EDA;

F.    That the EDA was required to pay Defendant 6.5 million dollars under the documents attached as **Exhibit C**;

G.    That documentation regarding records of payments to her or anyone on her behalf under the Executed Settlement Agreement were in her personnel file at the EDA offices.

100.    Defendant's discharge should be denied under 11 U.S.C. § 727(a)(4)(A).

**Third Cause of Action – 11 U.S.C. § 727(a)(7)**

101.    The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 1-50, 54-75, 78-83 (inclusive).

102.    Section 727(a)(7) of the Bankruptcy Code provides that a debtor should be granted a discharge unless the debtor "has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider[.]"

103.    Moveon8 is an insider of the Defendant.

104.    Defendant is an insider of Moveon8.

105.    Plaintiff objects to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(7) on the grounds that Defendant committed an act specified in Section 727(a)(4)(A) - knowingly and fraudulently making false oaths - in and in connection with the chapter 7 bankruptcy case of Moveon8.

106.    More specifically, at the Moveon8 meeting of creditors on November 13, 2020, Defendant gave material testimony under oath that she knew was false, including, but not limited to:

A.      There was income available to Moveon8 from a settlement agreement between

Defendant and someone else;

B.      Defendant had a settlement agreement that she was going be getting money from

and Defendant used those funds, at least in part, to fund development through

Moveon8;

C.      Defendant received a portion of the settlement funds;

D.      Defendant's testimony was true and correct to the best of her knowledge and belief.

***Causes of Action if the Purported Settlement Agreement Exists***

**Fourth Cause of Action – 11 U.S.C. § 727(a)(3)**

107.    The allegations set forth above are incorporated herein as if repeated in their

entirety, particularly paragraphs 1-15, 17-18, 21-24, 28-39, 42-44, 49-53, 57-58, 61-63, 67-74, 76-

78, 84-85 (inclusive).

108.    A discharge may be denied to a debtor when, "the debtor has concealed, destroyed,

mutilated, falsified, or failed to keep or preserve any recorded information, including books,

documents, records, and papers, from which the debtor's financial condition or business

transactions might be ascertained, unless such act or failure to act was justified under all of the

circumstances of the case;".  11 U.S.C. § 727(a)(3).

109.    A debtor may not assert his or her rights under the Fifth Amendment to the United

States Constitution to avoid his or her burden of proof under Section 727(a)(3).  *See In re Wazeter*,

209 B.R. 222, 231 (W.D. Mich. 1997) ("Debtor contends that the bankruptcy court substituted the

invocation of Fifth Amendment rights for evidence of inadequate records. The debtor is incorrect

in arriving at this conclusion. The court instead concluded that the invocation of such rights could

not relieve debtor of his burden to prove justification.").

110.    Defendant has violated § 727(a)(3) by concealing, destroying, mutilating, falsifying or failing to keep or preserve books, documents, records, and papers, from which her financial condition or business transactions might be ascertained, including, but not limited to:

A.    Concealing, destroying, falsifying or failing to keep or preserve the original, complete Executed Settlement Agreement with the EDA;

B.    Concealing, destroying, falsifying or failing to keep or preserve documents related to the Executed Settlement Agreement with the EDA, including documents sufficient to show requests for payment under the Executed Settlement Agreement with the EDA by Defendant, approval of such requests by the EDA, documents sufficient to show payments to her under the Executed Settlement Agreement with the EDA and amounts due Defendant as of the petition date;

111.    The concealment, destruction, mutilation, falsification, or failure to keep or preserve any recorded information, from which Defendant's financial condition or business transactions might be ascertained is not justified under all the circumstances of this case.

112.    Defendant's discharge should be denied under 11 U.S.C. § 727(a)(3).

**Fifth Cause of Action -- 11 U.S.C. § 727(a)(5)**

113.    The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 1-15, 17-18, 21-24, 28-39, 42-44, 49-53, 57-58, 61-63, 67-74, 76-78, 84-85 (inclusive).

114.    Section 727(a)(5) of the Bankruptcy Code provides that a debtor should be granted a discharge unless the debtor "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"

115.   "In a proceeding involving Section 727(a)(5), the initial burden is on the party objecting to a discharge to produce evidence establishing the basis for his objection whereupon the burden shifts to the debtor to explain satisfactorily the loss or deficiency of assets." *In re Farouki*, 133 B.R. 769, 777 (Bankr. E.D. Va. 1991), *aff'd* 14 F.3d 244, 251 (4th Cir. 1994). The explanation must be reasonable and credible and "[t]he failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5)." *Id.*

116.   Debtor's invocation of the Fifth Amendment does not excuse her from the application of Section 727(a)(5). *See In re Horridge*, 127 B.R. 798, 799-800 (S.D. Tex. 1991) ("Section 727(a)(5) would be meaningless if debtors could dispose of their assets prior to the filing of bankruptcy and then withhold all information from creditors by asserting a claim of privilege.").

117.   Plaintiff objects to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(5) on the grounds that Defendant has failed to explain satisfactorily any loss of assets or deficiency of assets to meet Defendant's liabilities.

118.   By way of example and not limitation, Defendant has failed to satisfactorily explain: the loss or deficiency of the 6.5 million dollars allegedly owed to her under the Executed Settlement Agreement; and the loss or deficiency of assets related to all funds received from the EDA prior to her termination including, without limitation, the funds underpinning the EDA's claims against Defendant.  More specifically, Defendant has:

A.   Provided inaccurate answers on Schedule A/B and the Statement of Financial Affairs;

B.   Failed to provide records or satisfactorily account for all funds received from the EDA and explain the disposition of such funds;

C.      Failed to explain satisfactorily the disposition of payments or other assets received

under the Executed Settlement Agreement;

D.      Failed to identify the amount owed her under the Executed Settlement Agreement

on the petition date;

E.      Failed to testify regarding the circumstances surrounding the execution of the

Executed Settlement Agreement;

F.      Failed to identify the names of persons whose testimony could be used to establish

the veracity of Debtor's claims about the Executed Settlement Agreement;

G.      Failure to explain the sources of funding for and the disposition of assets belonging

to legal entities owned by Defendant, including, but not limited to, Moveon8 and

Daboyz;

H.      Failed to explain the gap between the sum of 6.5 million dollars allegedly owed to

her by the EDA under the Executed Settlement Agreement dated August 28, 2015

the value of her scheduled assets as of the date of the filing of the Petition.

119.    The Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

120.    The United States Trustee reserves the right to alter, amend, or supplement this

complaint as more information becomes available.

WHEREFORE, Plaintiff prays that the discharge of Defendant from her debts be denied

and that Plaintiff be granted such other and further relief as is just.

Dated: October 20, 2021                          JOHN P. FITZGERALD, III

                                                 Acting United States
                                                 Trustee for Region Four
                                                   /s/ B. Webb King
                                                 Trial Attorney for the United States Trustee.

B. Webb King (VSB #47044)
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
Telephone: (540) 857-2838
Webb.King@usdoj.gov